# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-4141

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant,　　　　　*　Appeal from the United States
　　　　　　　　　　　　　　　　　*　District Court for the District
　　v.　　　　　　　　　　　　　*　of Minnesota.
　　　　　　　　　　　　　　　　　*
Jerardo Martinez-Cortez,　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee.　　　　　*

_____

Submitted:　November 18, 2003

Filed:　January 13, 2004

_____

Before MURPHY, LAY, and FAGG, Circuit Judges.

_____

FAGG, Circuit Judge.

Jerardo Martinez-Cortez pleaded guilty to conspiracy to distribute five hundred grams or more of methamphetamine in violation 21 U.S.C. §§ 846, 841(b)(1)(A). The presentence report (PSR) concluded Martinez-Cortez had four criminal history points based on two convictions in Minnesota state court. For leaving the scene of an accident, Martinez-Cortez had been sentenced to ninety days in jail, with eighty-nine days suspended, followed by one year of probation. Because he was sentenced to probation for a year, the conviction resulted in one criminal history point. See U.S. Sentencing Guidelines Manual (U.S.S.G.) § 4A1.2(c)(1)(A). For driving while intoxicated, Martinez-Cortez had been sentenced to thirty days in jail, with twenty-

nine days stayed, and placed on probation for two years, resulting in one criminal history point under § 4A1.1(c). See id. § 4A1.2 n.5 (DWI convictions are counted and are not minor traffic infractions within the meaning of § 4A1.2(c)). Because Martinez-Cortez was on probation for the DWI offense when he committed his federal drug offense, he was assessed two criminal history points under § 4A1.1(d).

After he pleaded guilty, but before sentencing, Martinez-Cortez filed motions in Minnesota state court seeking to modify his state sentences nunc pro tunc. Martinez-Cortez did not copy the federal prosecutor, who knew Martinez-Cortez was returning to state court, but could not have anticipated the unusual relief Martinez-Cortez would seek and receive. Although the probationary terms had already been completed, Martinez-Cortez sought and obtained a reduction of the first term of probation from 365 to 364 days for the express purpose of avoiding a criminal history point in his federal drug sentencing. For the DWI term of probation, Martinez-Cortez sought and received a reduction of the term of probation from June 19, 2002, to September 30, 2000, so "he would be off supervision during the time the government alleges the federal [drug] conspiracy was in existence." Nevertheless, Martinez-Cortez did not seek to withdraw his guilty pleas and stipulated his state convictions would count for any later enhancements under state law. Nor did Martinez-Cortez seek to modify the terms of imprisonment.

Over the Government's objection, the district court calculated Martinez-Cortez's criminal history based on the modified state sentences and granted relief under the safety valve, which permits sentencing below the statutory minimum sentence when the defendant, among other things, has no "more than one criminal history point, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1); U.S.S.G. § 5C1.2. The Government appeals asserting the district court committed error in finding Martinez-Cortez eligible for the safety valve. Reviewing application of the Guidelines de novo, United States v. Webb, 218 F.3d 877, 879 (8th Cir. 2000), we agree and thus reverse.

Martinez-Cortez faced a mandatory minimum sentence of ten years in prison unless the safety valve could be applied. The safety valve would not be available if Martinez-Cortez had more than one criminal history point. The Guidelines direct courts to add criminal history points for "each prior sentence," U.S.S.G. § 4A1.1, except for specific misdemeanors and petty crimes, for which criminal history points are added or not according to § 4A1.2(c). A sentence for leaving the scene of an accident is counted only if the sentence was at least one year of probation or at least thirty days imprisonment. Id. § 4A1.2(c)(1). A sentence for driving while intoxicated is always counted, regardless of the length. Id. n.5. Whether an earlier sentence counts for criminal history purposes is a question of federal law. Webb, 218 F.3d at 879.

The Guidelines required the district court to count Martinez-Cortez's DWI conviction, regardless of the term of probation. U.S.S.G. § 4A1.1(c); id. § 4A1.2 n.5; see United States v. Stone, 325 F.3d 1030, 1031 (8th Cir. 2003). Because the sentence was less than sixty days, the district court was required to assess one criminal history point under § 4A1.1(c). The district court was also required to assess two criminal history points if Martinez-Cortez committed his federal drug offense "while under any criminal justice sentence, including probation." U.S.S.G. § 4A1.1(d). Whether Martinez-Cortez was under a criminal justice sentence for purposes of § 4A1.1(d) is a question of federal law. United States v. Renfrew, 957 F.2d 525, 526-27 (8th Cir. 1992). As a factual matter, Martinez committed his drug offense while he was on probation for the DWI offense. Martinez-Cortez pleaded guilty to the DWI offense on June 19, 2000. He was sentenced that day, and the sentence included a two-year term of probation. The time period of the federal drug conspiracy, as charged in the indictment and to which Martinez-Cortez pleaded guilty, was from October 1, 2000 to October 3, 2001. The question then becomes whether the Guidelines permitted the district court to disregard the fact of his actual sentence because, for the sole purpose of obtaining favorable federal sentencing consequences, Martinez-Cortez had

the probation period shortened after he served it and after he pleaded guilty to the federal drug conspiracy.

The Guidelines do permit courts to disregard some state court convictions and sentences for the purposes of criminal history. Specifically, the Guidelines direct courts not to count sentences for "expunged convictions." U.S.S.G. § 4A1.2(j). Nevertheless, courts must count sentences for convictions that, for reasons unrelated to innocence or errors of law, are set aside or for which the defendant is pardoned. Id. n. 10. Here, it is undisputed that Martinez-Cortez's state convictions were not expunged. Rather, his probationary terms were reduced after the probationary terms were served merely to obtain favorable federal sentencing. If Martinez-Cortez's convictions had been vacated for the express purpose of enabling him to become eligible for the safety valve, the sentences would have counted because the convictions would have been set aside for reasons unrelated to his innocence or errors of law. See United States v. Nicolace, 90 F.3d 255, 258 (8th Cir. 1996); United States v. Dobovsky, 279 F.3d 5, 8-9 (1st Cir. 2002). We conclude that, as a matter of federal law, Martinez-Cortez's lesser step of modifying his sentences after they were served for reasons unrelated to his innocence or errors of law is not a valid basis for not counting the sentences for criminal history purposes. Thus, when Martinez-Cortez committed the federal drug offense he remained under a sentence of probation for the purposes of § 4A1.1(d) and the district court was required to assess two criminal history points.

For the same reasons, the district court was required to assess one criminal history point for Martinez-Cortez's conviction for leaving the scene of an accident because he served one year of probation for the conviction and changed the probationary term later only to obtain federal sentencing benefits. U.S.S.G. § 4A1.2(c)(1).

In sum, given the timing and purpose of Martinez-Cortez's state sentence reductions, we believe the Guidelines required the district court to conclude Martinez-Lopez had four criminal history points and thus was ineligible for the safety valve. Accordingly, we reverse and remand for imposition of the mandatory minimum sentence.

LAY, Circuit Judge, dissenting.

As the Government reveals, this case "presents a unique sentencing issue which is apparently one of first impression at the appellate level." The primary issue concerns Defendant Jerardo Martinez-Cortez's eligibility for safety valve relief under the Guidelines. See 18 U.S.C. § 3553(f)(2); U.S. Sentencing Guidelines Manual § 5C1.2 (2002) [hereinafter U.S.S.G.]. Prior to his present offense, the Defendant was convicted in state court for two misdemeanor driving offenses, to-wit: leaving the scene of an accident and driving while intoxicated. For the former offense, the Defendant served one day in jail and was placed on one year of probation, resulting in one criminal history point under the Guidelines. See U.S.S.G. § 4A1.2(c). For the latter offense, the Defendant served one day in jail and was placed on probation for two years, resulting in one additional criminal history point. See U.S.S.G. § 4A1.2, cmt. n.5. On the last day of probation, the Defendant committed the instant offense and was therefore assessed two more criminal history points. See U.S.S.G. § 4A1.1(d).

As the majority points out, the Defendant, after pleading guilty to the federal offense, filed motions in the state court to modify his state sentences *nunc pro tunc*. A state court judge reduced the Defendant's term of probation for leaving the scene of an accident from 365 to 364 days. Another state court judge reduced the term of probation for the DWI offense such that it ended one day prior to his arrest in the present case. The net result of these reductions was to alter the Defendant's criminal

history score, giving him one criminal history point under the Guidelines and thereby making him eligible for the safety valve.

At the time of sentencing for the federal offense, the district judge, the Honorable Paul A. Magnuson, followed the recommendation of the Federal Probation Office that the state court modifications should be given effect. Thus, the Defendant qualified for relief under the safety valve and avoided the harsh mandatory minimum ten-year sentence under the Guidelines. The majority holds, without authority, that under the Guidelines the district court erred in refusing to look beyond the simple and obvious fact that the Defendant's sentences had been modified in a state court proceeding. The majority reasons that as a matter of federal law, once the state sentences were served, there was no valid basis for refusing to count them for criminal history purposes. I must respectfully disagree.

The majority opinion, in all due respect, fails to address the fundamental principles of federalism and deference owed by federal courts to state courts in processing their own criminal cases. The structure of the Guidelines evidences an intent on the part of the Sentencing Commission to look to the sentences actually imposed by state courts for state criminal convictions when calculating a federal defendant's criminal history score. Consonant with this idea, the Supreme Court has made clear that the proper forum in which to attack state convictions (and their attendant sentences) is a state court, not a federal one. See generally Daniels v. United States, 532 U.S. 374 (2001); Custis v. United States, 511 U.S. 485 (1994). In assessing the length of a federal sentence, therefore, the sentencing court looks only at the prior state sentences as they exist at the time of sentencing. The majority also slights the fact that in the state court proceedings where the modification of the Defendant's sentences took place, the state prosecutor was present and raised no opposition whatsoever. More importantly, the Defendant appeared before two distinguished state court judges who ordered the terms of probation modified. There

was no appeal from these modifications. The state court proceedings thus carry with them a presumption of regularity that the majority lightly casts aside.

The majority finds that these modifications were not valid for several reasons. First, the majority finds fault with Defendant's counsel for not serving notice on the federal prosecutor that he was going to seek modification of the state court sentence. The record shows otherwise. Both the federal district judge and the United States Attorney were notified that the Defendant would seek further relief from his state sentences in state court. Furthermore, I seriously question whether a federal prosecutor would have standing in the state court to contest a prior state conviction. The majority also finds that the sentence modifications were made for the express purpose of changing the Defendant's criminal history score under the Guidelines. Even taking this to be true, I respectfully submit that the reasons why the state judges modified the state terms of probation are immaterial. See United States v. Guthrie, 931 F.2d 564, 572 (9th Cir. 1991) ("[T]he Guidelines are concerned only with the state court's final determination, not with the soundness of its reasoning.").[1]

To counter these concerns, the majority simply asserts that when the Defendant "committed his federal drug offense, he remained on probation for the purposes of § 4A1.1(d) and the district court was required to assess two criminal points." This reasoning fails to give any effect or credit to the *nunc pro tunc* orders of the state courts. In fact, the only basis upon which the majority reaches its decision is

---

[1]Similarly, the Government's brief states that if the sentence modifications had some other basis such as proof of substantial assistance, the result *would be different*. Thus, the Government argues that the reason for modification should make the difference as to whether it can affect the federal sentence. But, as I have previously noted, this overlooks that the federal court cannot second guess the state courts as to the reason for modification but must only look at the result. Otherwise, Custis and Daniels would have little meaning.

Application Note 10 of § 4A1.2 of the Guidelines.[2]  Closer scrutiny reveals that this is no support for such a weighty federal sentence.  There is no question that the state court's modification of the probationary terms did not "expunge" his convictions.  Similarly, there is no question that the modification of the probationary sentence did not "set aside" the state court convictions.  Application Note 10 simply does not address the modification of a prior sentence and is therefore not controlling.  The best argument one might make is that Application Note 10 is ambiguous on the issue of sentence modifications.[3]  Even if this be true, however, then the rule of lenity should apply and the state court modifications should be upheld.  See United States v. Oetken, 241 F.3d 1057, 1060 (8th Cir. 2001) ("Where there are two plausible readings of a [G]uideline provision, we apply the rule of lenity and give the defendant the benefit of the reading that results in the shorter sentence.").

The majority also seems to place emphasis upon the fact that at the time the Defendant moved to modify his state court sentences, they had already been fully served.  Thus, the majority argues that the state court cannot amend a sentence after it has already been served.  This argument is a total *non sequitur* and fails to understand that a sentence already served can be attacked under available state post-

---

[2]Application Note 10 provides:

Convictions Set Aside or Defendant Pardoned.  A number of jurisdictions have various procedures pursuant to which previous convictions may be set aside or the defendant may be pardoned for reasons unrelated to innocence or errors of law, e.g., in order to restore civil rights or to remove the stigma associated with a criminal conviction.  Sentences resulting from such convictions are to be counted.  However, expunged convictions are not counted. §4A1.2(j).

U.S.S.G. § 4A1.2, cmt. n.10.

[3]This argument was not raised before the federal district court at the time of sentencing; but even if it had been, it would not alter the sentence of the district court.

conviction proceedings to avoid collateral consequences. See <u>Daniels</u>, 532 U.S. at 382; <u>Custis</u>, 511 U.S. at 497. This is precisely what happened in the present case. The state court modified the state court sentences *nunc pro tunc*, effectively meaning that in the eyes of the state court, they were the sentences actually imposed for conviction. It is clear that two respected state court judges, with the state prosecutor present, amended the term of probation. Under such circumstances, Judge Magnuson had no alternative other than to apply the safety valve.[4]

The majority opinion fails to provide proper respect for and deference to the state court's modification of its own sentences. In my mind, the reasons offered by the majority are conclusory and do not provide a reasoned basis upon which to reverse the judgment of the federal district court. Judge Magnuson was correct and the majority is wrong.

—————————————————

———————————

[4]The Government concedes that the Defendant would meet all other grounds to qualify for the safety valve:

> [T]he parties agree Mr. Martinez-Cortez did not use violence or the credible threat of violence, nor did he possess a firearm; the offense did not result in death or serious bodily injury to any person; he played only a minor role in the offense; and he provided the Government with truthful information about his participation in the offense. See Guidelines § 5C1.2(a)(1)-(5); 18 U.S.C. § 3553(f)(1)-(5); Government's Sentencing Memorandum at 4.

Appellee's Br. at 1 n.1.