TIMLIN, Senior District Judge,
dissenting:
I respectfully dissent. This circuit treats “reasoning central to a panel’s decision as binding later panels.” Garcia v. Holder, 621 F.3d 906, 911 (9th Cir.2010). “[Wjhere a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.” Miranda B. v. Kitzhaber, 328 F.3d 1181, 1186 (9th Cir.2003) (per curiam) (quoting United States v. Johnson, 256 F.3d 895, 914 (9th Cir.2001) (en banc) (Kozinski, J., concurring)).
I would hold that United States v. Alba-Flores, 577 F.3d 1104 (9th Cir.2009), cert. denied, — U.S.-, 130 S.Ct. 3344, 176 L.Ed.2d 1237 (2010), controls here in both Yepez and Acosta-Montes.[1] The AlbaFloreé panel held that, because the defendant was serving a sentence of probation of more than one year at the time he committed his federal offense, he was properly assigned two criminal history points pursuant to U.S.S.G. § 4Al.l(d) and was disqualified from obtaining safety valve relief from the mandatory minimum sentence. 577 F.3d at 1111. The Court reached that holding by concluding that the concrete fact that the defendant was serving a sentence of probation of more than one year at the time of his federal offense was not altered by a state court’s subsequent nunc pro tunc order shortening his term of probation to less than one year:
[It is a] concrete fact that he was “under [a] criminal justice sentence” [pursuant to U.S.S.G. § 4Al.l(d) ] when he committed his federal offense. The later state court order could not change that concrete fact. It is the actual situation at that precise point in time, not the situation at some earlier or later point *1200 that controls.... [T]he proper inquiry is whether Alba-Flores was actually under a “criminal justice sentence” when he committed the offense at hand. He was.
Id.. Albctr-Flores thus followed the Eighth and Tenth Circuits in “eschew[ing] the notion that a state court could affect federal sentencing by issuing a nunc pro tunc order after the concrete facts pertinent to the federal sentencing were already in place.” Id. at 1110-11 (discussing United States v. Martinez-Cortez, 354 F.3d 830 (8th Cir.2004) and United States v. Pech-Aboytes, 562 F.3d 1234 (10th Cir.2009)).
That issue was germane to the resolution of the ease and was resolved after reasoned consideration. Accordingly, I believe Albar-Flores controls here.
Nor do I find persuasive the majority’s reliance on principles of comity and federalism. The conduct in these cases by trial counsel for Yepez and Acosta-Montes reeks of the “same odor of gaming the federal sentencing system” that Judge Fernandez noted in Alba-Flores. 577 F.3d at 1111. After pleading guilty in federal court to importing methamphetamine in violation of federal law, Yepez and Acosta-Montes filed motions with the state court that unabashedly sought nunc pro tunc termination of their probation for the explicit purpose of changing the outcome of their upcoming federal sentencings.[2] Without explanation, the motions were granted.[3]
The majority here attempts to mask the odor of gamesmanship with a novel conception of the relationship between federal and state courts. As the majority correctly notes, federal courts should generally avoid interfering with state court proceedings. See Younger v. Harris, 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). But it is also clear that state courts should generally avoid interfering with federal court proceedings. See Garamendi v. Executive Life Ins. Co., 17 Cal.App.4th 504, 21 Cal.Rptr.2d 578, 590 n. 20 (1993) (“Early in the history of our federal system, a general rule was established that state and federal courts should not interfere with or restrain each other’s proceeding.” (citing Donovan v. Dallas, 377 U.S. 408, 412, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964))); see also Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng’rs, 398 U.S. 281, 295, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970) (“[Sjome federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court’s consideration or disposition of a case as to seriously impair the federal court’s flexibility and authority to decide that case.”).
The troubling effect of the majority’s holding is that, where convicted federal *1201 defendants are facing imposition of federal statutory mandatory minimum sentences in upcoming sentencing proceedings in federal court, it is a state court that will decide whether imposing that mandatory minimum is appropriate. See Maj. Op. at 1191 (“[Bjecause the state supervising judges are aware of the implications of modification orders in federal sentence^], where they believe the mandatory minimum is warranted [for the federal crime] they would be unlikely to grant a request for such an order.” (emphasis added)). How the state court makes a fully informed decision on whether imposing the mandatory minimum is warranted for the defendant’s federal crime is unclear given that federal prosecutors may not be able to participate in the state court proceeding. See Martinez-Cortez, 354 F.3d at 834 (Lay, J., dissenting) (“I seriously question whether a federal prosecutor would have standing in the state court to contest a prior state conviction.”). Nonetheless, if the state court decides that the “ends of justice,” see Cal.Penal Code § 1203.3(a), are served in its view by enabling the defendant to avoid the imposition of a federal mandatory minimum sentence, that state court can change retroactively by a nunc pro tunc order the facts applicable to the defendant’s upcoming federal sentencing.[4]
To state it somewhat differently, the majority in effect has by judicial fiat created an exception to one of five criteria established by Congress and the President for the federal statutory exception to a mandatory minimum sentence of imprisonment for certain drug offenses, ie., that a defendant’s criminal history may not exceed one point under 18 U.S.C. § 3553(f). The majority opines that a state court may exercise its broad discretion authorized by state statute, ie., Cal.Penal Code § 1203.3, to directly affect the application of federal sentencing law by causing a federal defendant convicted of a serious federal offense not to be subject to the sentence provided by Congress and the President.
Comity does not require us to allow federal policy determinations regarding the punishment for federal crimes be trumped by a state court’s perspective on whether justice is served by the imposition of a mandatory minimum sentence in a federal case.[5] It is simply not a state *1202 court’s prerogative to decide whether a mandatory minimum sentence is appropriate for a convicted federal defendant awaiting his federal sentencing. Like the majority in Albor-Flores, I would eschew the notion that state courts can affect federal sentencing by issuing nunc pro tunc orders after the concrete facts pertinent to the federal sentencing are already in place.
Finally, the majority extols that its holding “not only reinforces the principle of comity, but also provides federal district courts with the additional sentencing discretion that both of the sentencing courts in these cases desired.” Maj. Op. at 1199. I question whether this Court has the authority to issue a holding for the purpose of providing district courts with additional sentencing discretion that it believes certain judges desire for considering whether a mandatory minimum sentence is appropriate. Congress and the President promulgate by statute the sentences for federal offenses. It is my view that when Congress and the President also provide that certain sentences shall include a mandatory minimum length, the judiciary as the Third Branch must apply that mandatory minimum. It is not the role of the judiciary to carve out exceptions in individual cases that give the district court additional discretion notwithstanding an applicable mandatory minimum.
Accordingly, I would affirm the District Court’s sentence in Yepez and would reverse the District Court’s sentence in Acosta-Montes, ordering that case remanded for resentencing.

. I concur with the majority’s holding that Yepez did not waive his right to appeal imposition of the mandatory minimum sentence by the District Court because the provision in the plea agreement concerning waiver of appeal as to the sentence was ambiguous as discussed in footnote 3 of the majority opinion.

. The majority uses frequently in its opinion the term "modification” or "modify” regarding the state courts' nunc pro tunc orders although it is clear from the record that the state courts "terminated” probation nunc pro tunc. Other panels have similarly used the term "modification” as including the "termination” of probation, i.e., state courts supervising probation may modify probation by terminating it. See Butler v. Curry, 528 F.3d 624, 646 (9th Cir.2008) ("Under California probation law, ... a judge retains the authority to modify the terms of an individual's probation at any time, including terminating probation early ...”). I, however, view "modification” to be conceptually different from "termination” with potentially different legal ramifications. Compare Black's Law Dictionary 1609 (9th ed.2009) (defining "termination” as "[t]he act of ending something”) with id. at 1095 (defining "modification” as "[a] change to something; an alteration”). For that reason, I will use the terms "termination” or "terminate" instead of "modification” or "modify.”

. I note that neither order terminating probation actually refers to California Penal Code § 1203.3. As the majority does, I will consider for purposes of my dissent the orders as made pursuant to § 1203.3.

. Nunc pro tunc orders are generally limited to correcting clerical errors. People v. Borja, 95 Cal.App.4th 481, 115 Cal.Rptr.2d 728, 731 (2002). Such orders simply correct the record to properly reflect the court’s original intentions at the time the earlier order was entered. See Singh v. Mukasey, 533 F.3d 1103, 1110 (9th Cir.2008) (quoting United States v. Sumner, 226 F.3d 1005, 1009-10 (9th Cir.2000)). The nunc pro tunc orders here were not sought to correct clerical errors so as to properly reflect the state court's original intention when it set the term of probation. The orders were sought in an attempt to retroactively change the fact that Yepez and Acosta-Montes were under a criminal justice sentence of probation when they committed the federal drug offenses for which they were awaiting sentencing.

. The majority’s understanding of comity is contrary to those cases that actually involve analogous circumstances to those here, all of which reject the contention that state courts may alter the outcome of a federal sentencing by issuing nunc pro tunc orders after the federal crime was committed. See Alba-Flores, 577 F.3d at 1110-11; Martinez-Cortez, 354 F.3d at 832-33; Pech-Aboytes, 562 F.3d at 1240. On the other hand, the holdings of the cases relied upon by the majority are far afield from the situation we face here. See Allen v. McCurry, 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (holding that in federal § 1983 actions federal courts must give preclusive effect to state court judgments if the courts from that state would do so); Younger, 401 U.S. at 54, 91 S.Ct. 746 (holding that, absent unusual circumstances, federal courts should not enjoin pending state criminal prosecutions); Taylor v. Maddox, 366 F.3d 992, 999, 1018 (9th Cir.2004) (holding that state prisoner was entitled to habeas relief).