NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JAN 21 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

EDGAR LLAUSAS-SILVA,

Defendant - Appellant.

No. 23-3549

D.C. No.
2:22-cr-00135-SVW-2

MEMORANDUM[*]

Appeal from the United States District Court
for the Central District of California
Stephen V. Wilson, District Judge, Presiding

Submitted January 15, 2025[**]
Pasadena, California

Before: RAWLINSON and M. SMITH, Circuit Judges, and RAKOFF, District
Judge.[***]

Defendant-Appellant Edgar Llausas-Silva was convicted of one count of

conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 846 and one

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***] The Honorable Jed S. Rakoff, United States District Judge for the
Southern District of New York, sitting by designation.

count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). Llausas-Silva challenges his sentence on several different grounds.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Because the parties are familiar with the facts and background of this case, we provide only the information necessary to give context to our ruling. After being arrested for his role in a drug transaction involving a large quantity of methamphetamine, Llausas-Silva eventually pleaded guilty to conspiracy to distribute methamphetamine and to possessing methamphetamine with the intent to distribute. Llausas-Silva sought relief from the minimum mandatory sentence pursuant to the statutory safety valve, *see* 18 U.S.C. § 3553(f)—a request that the Government opposed on the grounds that Llausas-Silva had not been entirely truthful in his proffer. The district court ultimately agreed with the Government, concluding that Llausas-Silva was not eligible for safety-valve relief. It sentenced Llausas-Silva to 120 months of imprisonment, the minimum mandatory sentence. It also sentenced Llausas-Silva to five years of supervised release and required him to comply with the standard discretionary conditions outlined in the district court's Second Amended General Order 20-04.

Llausas-Silva raises four challenges to his sentence, none of which succeed.

---

[1] Llausas-Silva's opening brief included an additional issue—that the judgment should be amended to correct a clerical error—but that issue has since been resolved.

*First*, Llausas-Silva argues that the district court erred in concluding that he was ineligible for safety-valve relief pursuant to 18 U.S.C. § 3553(f) because he had not been completely truthful.  But we review the district court's factual determination that a defendant has not been truthful only for clear error, and we "'must accept the district court's factual findings unless we are "left with a definite and firm conviction that a mistake has been made."'"  *United States v. Salazar*, 61 F.4th 723, 726 (9th Cir. 2023) (quoting *United States v. Lizarraga-Carrizales*, 757 F.3d 995, 997 (9th Cir. 2014)).  Moreover, the district court may rely on reasonable inferences and its experience in determining whether a defendant has been entirely truthful.  *See United States v. Orm Hieng*, 679 F.3d 1131, 1144–45 (9th Cir. 2012).  In the communications constituting his proffer, Llausas-Silva took the position that he was only a money courier and did not personally bring the methamphetamine to the drug transaction.  The district court did not clearly err in determining that, in light of the message about the drug transaction received by Llausas-Silva and the particular circumstances of the transaction, Llausas-Silva's representations were not entirely truthful.  Nor did the district court abuse its discretion in declining to hold an evidentiary hearing.  *See United States v. Houston*, 217 F.3d 1204, 1206–07 (9th Cir. 2000).

*Second*, Llausas-Silva argues that the district court improperly relied on provisions of the U.S. Sentencing Guidelines that calculated his advisory

sentencing range based on the purity of the methamphetamine seized. But although the district court *could* have agreed with Llausas-Silva that the purity-based Guideline provisions are outdated and varied downward based on a policy disagreement, it did not abuse its discretion in declining to do so. *See United States v. Kabir*, 51 F.4th 820, 828–29 (9th Cir. 2022), *cert denied*, 143 S. Ct. 838 (2023); *see also United States v. Blackshire*, 98 F.4th 1146, 1155 (9th Cir. 2024) ("[W]e review a district court's . . . application of the Guidelines to the facts for abuse of discretion[] . . . ."). Moreover, even if the district court had erred in declining to vary downward in calculating the Guidelines range—which it did not—such an error would be of no moment because Llausas-Silva was given the statutory minimum sentence. *See United States v. Miller*, 151 F.3d 957, 962 (9th Cir. 1998).

*Third*, Llausas-Silva argues that the district court violated his right to be present for the imposition of discretionary supervised-release provisions, relying on *United States v. Montoya*, 82 F.4th 640, 647 (9th Cir. 2023) (en banc). But there was no *Montoya* error here. Llausas-Silva had advance notice of the discretionary conditions that he would be subject to based on the U.S. Probation Office's sentencing recommendation letters and the district court's Second Amended General Order 20-04. *See id.* at 652 (noting that a "courtwide . . . standing order[] that list[s] conditions" could suffice to put a defendant on notice

of what conditions would be imposed). Additionally, out of an abundance of caution, the district court ensured that Llausas-Silva was aware of the discretionary conditions that he would be subject to by having a translator read Second Amended General Order 20-04. This was sufficient to give Llausas-Silva "a meaningful opportunity to challenge those conditions." *Id.*[2]

*Fourth*, Llausas-Silva challenges the district court's application of a two-level Guidelines enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) on the grounds that his coconspirator, Alfredo Vidana-Zavala, possessed a firearm during the methamphetamine transaction. We reject his challenge. "[A] defendant convicted of conspiracy may be sentenced not only on the basis of his own conduct, but also on the basis of the 'conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant.'" *United States v. Garcia*, 909 F.2d 1346, 1349 (9th Cir. 1990) (quoting U.S.S.G.

---

[2] Llausas-Silva also raises poorly developed arguments that some of the specific discretionary conditions are unconstitutional. He first argues that the conditions improperly delegate judicial authority to the probation officer. We are unpersuaded. "Where the district court determines '*whether* a defendant must abide by a condition, and *how* . . . a defendant will be subjected to the condition, it is permissible to delegate to the probation officer the details of where and when the condition will be satisfied.'" *United States v. Nishida*, 53 F.4th 1144, 1150 (9th Cir. 2022) (omission in original) (quoting *United States v. Wells*, 29 F.4th 580, 592 (9th Cir. 2022)). The conditions imposed here—including Condition 14, the only condition pointed to by Llausas-Silva—fall within this rule. Additionally, Llausas-Silva suggests in passing that the discretionary conditions are overbroad, but this argument is not sufficiently developed for us to pass on it.

§ 1B1.3, comment n.1). The district court did not clearly err in concluding that Vidana-Zavala's carrying of the firearm was reasonably foreseeable. Where, as here, a defendant is a party to a large drug transaction, it is reasonably foreseeable that a codefendant may be carrying a firearm. *See id.* at 1349–50; *see also United States v. Willis*, 899 F.2d 873, 875 (9th Cir. 1990) ("[T]rafficking in narcotics is very often related to the carrying and use of firearms." (quoting *United States v. Ramos*, 861 F.2d 228, 231 n.3 (9th Cir. 1988))). Moreover, as was the case with Llausas-Silva's methamphetamine-purity argument, the precise Guidelines sentence is ultimately immaterial because Llausas-Silva was given the minimum mandatory sentence.

**AFFIRMED.**